[L. A. No. 23005. In Bank. Dec. 2, 1955.]

J. S. GARMON et al., Respondents, v. SAN DIEGO BUILD-
ING TRADES COUNCIL et al., Appellants.

Todd & Todd, Thomas Whelan, John T. Holt and Clarence E. Todd for Appellants.

Gray, Cary, Ames & Frye, James W. Archer and Ward W. Waddell, Jr., for Respondents.

EDMONDS, J.—The Garmons, while engaged in business as partners under the name of Valley Lumber Company, became involved in a dispute with union labor organizations. The appeal is from a judgment which enjoins the unions and their members from carrying on certain activities and awards damages in the amount of $1,000 against them.

Following a trial, the court made these findings of fact:

Valley Lumber Company is engaged in the business of selling lumber and building materials, and its operations affect interstate commerce. In the previous year it sold materials originating and manufactured out of California of a value exceeding $250,000. None of its employees belong to any of the defendant unions and none have designated either of them as a labor representative. The employees have indicated that they do not desire to join, or be represented by, a union. The National Labor Relations Board has not certified either of the

unions as the representative of the employees and the company has not recognized any union as such.

The union demanded a labor agreement containing a clause which would require the company to employ, and continue in employment, only such persons as are, or immediately become, members of the defendant unions.[1] The company refused to execute the agreement, upon the grounds that it would be a violation of the National Labor Relations Act to do so before the employees, or an appropriate unit thereof, designated a union as its collective bargaining agent. Shortly thereafter, the unions placed pickets at the company's place of business.

The intent of the unions was not to induce the employees to join one of them, nor to provide education or information as to the benefits of unionization. The only purpose was to force the company to execute the agreement or suffer destruction of its business. In addition to picketing, union agents followed the company's trucks and threatened persons about to enter its place of business with economic injury. By this conduct, and the use of language calculated to instill fear of such injury, the unions induced building contractors to discontinue their patronage of the company, with consequent damage to the business amounting to $1,000.

The National Labor Relations Board, " . . . pursuant to a policy declared by it, refused to take jurisdiction of the controversy between plaintiffs and defendants for the purpose of determining whether defendants should be designated as the collective bargaining representative of the employees of plaintiffs."

Upon these findings a judgment was entered which awards the company $1,000 damages and enjoins the unions " . . . from picketing the places of business of plaintiffs, from following the trucks of the plaintiffs, from preventing or attempting to prevent, by means of threats, express or implied, persons having business with the plaintiffs from entering the premises of the plaintiffs, from inducing or attempting to induce by such means potential customers of plaintiffs to refuse to purchase from plaintiffs or to refuse to accept delivery of goods

---

[1] "Pursuant to the terms of Section 8(a)(3) of the Labor Management Relations Act, 1947, there shall be no limitation of the Employer as to whom he shall employ, continue in employment, or discharge, except that every employee listed under Section III, (A) and (B), hereof, not otherwise excluded, shall be, or shall make application within thirty (30) days, become and remain a member in good standing of Millmen's Union, Local 2020, of the United Brotherhood of Carpenters and Joiners of America, or Building Material and Dump Truck Drivers, Local 36."

from plaintiffs or in plaintiffs' trucks, and from doing any other acts tending or intended to injure plaintiffs' business, in order to compel plaintiffs to execute any contract with the defendants, or any of them, requiring plaintiffs to discriminate with respect to conditions of employment by reason of membership, or lack thereof, in any labor organization unless and until defendants, or any one or more of them, have been properly designated as the collective bargaining representative of plaintiffs' employees or an appropriate unit thereof.''

The unions contend that jurisdiction of the controversy is exclusively in the National Labor Relations Board. They also attack the judgment upon the ground that the company did not exhaust its administrative remedies. Other points presented are: the evidence does not support the findings; the findings do not include all issues tendered; the award of damages is based upon evidence entirely speculative; and, the record shows no violation of any state law.

In support of the judgment, the company asserts that the jurisdiction of the national board is not exclusive, or if it is, the state court may enjoin unlawful conduct when the board has declined to act. Another point relied upon is that, regardless of state jurisdiction to enjoin the unions, the superior court's award of damages for violation of the state's public policy is not contrary to any federal law.

██ The National Labor Relations Board has exclusive primary jurisdiction to prevent unlawful demands. (*Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546]; *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228]; *United Const. Workers* v. *Laburnum Const. Corp.*, 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025]; *Bethlehem Steel* v. *New York State Labor Relations Board*, 330 U.S. 767, 769 [67 S.Ct. 1026, 91 L.Ed. 1234].) ██ The purpose of the picketing was to compel the company to sign an agreement which included a clause requiring the employer to encourage membership in the unions. In the circumstances here shown, under the Labor Management Relations Act, this was an unfair labor practice.[2]

---

[2](a) ''It shall be an unfair labor practice for an employer . . . (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.' . . .''

(b) ''It shall be an unfair labor practice for a labor organization or its agents . . . (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3)

In the Garner case, a Pennsylvania court enjoined picketing which, contrary to a state statute, was being carried on for the purpose of coercing an employer to compel or "influence" employees to join the union. The state Supreme Court reversed the judgment upon the ground that the employer's sole remedy was that provided by the National Labor Management Relations Act. (*Garner* v. *Teamsters*, 373 Pa. 19 [94 A.2d 893].) The United States Supreme Court agreed, holding "that petitioner's grievance fell within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices. . . . "

■   However, the board need not accept every controversy of which it has jurisdiction. (*Haleston Drug Stores* v. *National Labor Relations Board*, 187 F.2d 418.  See discussion by Philip Feldblum, Jurisdictional "Tidelands" in Labor Relations, 3 Labor Law Journal 114.)   It hears and determines controversies only in connection with "enterprises whose operations have, or at which labor disputes would have, a pronounced impact upon the flow of interstate commerce."   (National Board Press release dated October 6, 1950.)

In the present case, the employer's position is that, when the National Labor Relations Board refuses to take jurisdiction of a dispute because the effect of the company's business on interstate commerce is not substantial, the state courts may act. The United States Supreme Court has not decided this question.   In the Garner case it pointed to the lack of any indication that "the federal Board would decline to exercise its powers once its jurisdiction was invoked." (*Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485 [74 S.Ct. 161 at 164, 98 L.Ed. 228].)   Later in *Building Trades Council* v. *Kinard Const. Co.*, 346 U.S. 933 [74 S.Ct. 373, 98 L.Ed 423], in reversing a state court's affirmance of an injunction on the authority of the Garner case, it said : "Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the state court could grant its own relief should the Board decline to exercise its jurisdiction."

■   The reason for prohibiting state courts from acting in cases in which the board has jurisdiction is to obtain uniform

---

or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership. . . . ''   (29 U.S.C. § 158.)

application of the substantive rules as expressed by Congress, and to avoid diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. (*Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485 [74 S.Ct. 161, 166, 98 L.Ed. 228].)

■ A remedy under federal laws available to an injured party may justify preemption of the field of labor relations, but when the application of that rule would result in the loss of all protection, there is no reason to bar state courts from providing relief. ■ There is no conflict of jurisdiction when the federal board determines not to adjudicate the issues. ■ Furthermore, a refusal to accept jurisdiction upon the ground that the issue presented does not sufficiently affect the national welfare to justify the board's attention, in effect, is a declaration that the national labor policy will not be jeopardized if the state assumes jurisdiction.

■ When Congress enacted the applicable statutes, it must have been aware that an unfair labor practice may affect management and labor in a small business to the same extent as in a large industry. The difference is only the effect on the national labor and economic level. Certainly Congress did not intend to deprive a business having only a limited effect on interstate commerce of all protection in a labor-management controversy. By giving the board discretion to accept or refuse jurisdiction, the legislative purpose must have been to give the state courts jurisdiction when the board specifically determines that the controversy will not affect the national economy. (Accord: *Your Food Stores* v. *Retail Clerks' Local No. 1564*, 124 F.Supp. 697, 703 ; *Truck Drivers, Chauffeurs, W. & Helpers Local No. 941* v. *Whitfield Transportation, Inc.*, —— Tex. —— [273 S.W.2d 857, 860] ; but *cf.*: *New York State Labor Relations Board* v. *Wags Transp. System*, 130 N.Y.S.2d 731; *Universal Car & Service Co.* v. *International Assn. of Machinists*, 27 C.C.H. Labor Law Reporter 68, 825.)

In the present case, the employer filed a petition for determination of representation, pursuant to the provisions of the National Labor Relations Act. It was informed by letter that "The amount of business done by Valley Lumber Company in interstate commerce is insufficient for the Board to assert jurisdiction on the basis of previous Board decisions." Later, after a careful investigation, the regional director of the board dismissed the petition. He stated that "in view of the scope of the business operation involved, it would not effectuate the purposes of the National Labor Relations Act to insti-

tute further proceedings at this time. . . . '' It appears without conflict that only $250,000 of the company's business during the preceding year was in interstate commerce, either directly or indirectly. In view of the general pronouncement by the board (Press Releases dated October 6, 1950 and July 14, 1954) that it will exercise jurisdiction only when an ''enterprise'' has a direct inflow of material valued at $500,000 a year, or an indirect flow valued at $1,000,000, a request for review of the Regional Director's action would have been futile.

The general policy of the board in regard to jurisdiction makes no distinction between an application to determine representation and one complaining of an unfair labor practice. A refusal to take jurisdiction of a controversy concerning representation constitutes a refusal to accept jurisdiction of a complaint against that employer which charges an unfair labor practice. In C. A. Braukman, etc. and International Union of Operating Engineers, 94 N.L.R.B. 234, the board said, ''True, the Board has not heretofore considered the instant complaint case. However, because the Board does not, with respect to the question of jurisdiction, differentiate between representation and complaint cases, we believe that dismissal of the . . . representation case on jurisdictional grounds . . . was in effect, notice to all parties concerned that any complaint case based on alleged unfair labor practices . . . would similarly be dismissed.'' (Also see: *National Labor Relations Board* v. *Guy F. Atkinson Co.*, 195 F.2d 141.)

Section 10(a) of the Taft-Hartley Act (29 U.S.C. § 160(a)), gives the board the power to prevent any person from engaging in an unfair labor practice when it affects interstate commerce. That section also empowers the board, by agreement, to cede jurisdiction of cases affecting such commerce to state agencies so long as the state law is not inconsistent with the national labor policy as expresesd in the federal laws. But Congress has not prohibited the state from assuming jurisdiction of conduct which would amount to an unfair labor practice under the federal law when the board refuses to take jurisdiction. When jurisdiction is declined by the board, the legislative mandate that nothing shall affect the board's power to enforce the act is not infringed upon.

The basis for refusing to allow a state court to take jurisdiction of a dispute within the cognizance of the board *in advance* of action by it is the purpose to avoid a possible conflict between state policy and that of the board in an

area in which the federal body has not had an opportunity to act. "Coincidence" of policy, the United States Supreme Court has declared, is not sufficient to avoid the danger of a possible conflict. (*Bethlehem Steel* v. *New York State Labor Relations Board,* 330 U.S. 767, 769 [67 S.Ct. 1026, 91 L.Ed. 1234].) However, if the state court should refuse to assume jurisdiction when the board has affirmatively declined to act, one party to the labor controversy might be able to flout the policy expressed by Congress in the national legislation.

The unions complain of the court's asserted failure to make a finding on their allegation that there was no unfair labor practice because, as clearly stated, the contract was not to be signed, and if signed, would not be accepted by the union unless the employees became members of it. But the findings that the unions presented the agreement to the company with a demand for its signature, followed by picketing and other activity with the purpose to compel the employer to execute the agreement although it would be illegal to do so, was a determination against the unions upon this defense.

The company argues that the trial court properly gave both damages and injunctive relief. It relies upon the rule stated in *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900], that "the object of concerted labor activity must be proper and that it must be sought by lawful means, otherwise the persons injured may obtain damages or injunctive relief." (P. 728.) They assert that damages were a proper redress for the injuries previously suffered from the picketing and concerted activities by defendants and an injunction is proper to avoid further injury. The appellants take the position that "the conduct of the labor union was lawful and proper in the light of both federal and state law."

One argument is that since the ultimate objective of the concerted economic pressure was to obtain a closed shop, which is a proper labor objective under the law of California (*McKay* v. *Retail Auto Salesmen's Local Union No. 1067,* 16 Cal.2d 311, 327 [106 P.2d 373]; *Shafer* v. *Registered Pharmacists Union Local 1172,* 16 Cal.2d 379, 387-388 [106 P.2d 403]), the purpose of the picketing was not "unlawful" and hence not within the rule of the Marinship case. For this proposition, reliance is placed upon *Park & Tilford I. Corp.* v. *International etc. of Teamsters,* 27 Cal.2d 599 [165 P.2d 891, 162 A.L.R. 1426].

The Park & Tilford case concerned an injunction which, a majority of the court concluded, was broader than that

allowed by the pleadings and the evidence. There, without having obtained the requisite majority of employees for the purposes of collective bargaining, a labor organization picketed and boycotted the employer after demanding of him that he sign a closed shop agreement with that organization. An injunction was granted restraining the union from all interference with the sale or delivery of the plaintiff's products and from all picketing and boycotting of its business. This relief was too broad, said a majority of the court, although the trial judge was correct in the conclusion that the demands made by the union were unlawful under the National Labor Relations Act.

The evidence as to the union's conduct, said the court, did not support the finding that the purpose of the concerted economic pressure was to compel the employer to violate the federal law by discriminating as to his employee's choice of union representation. Instead, it was held, the ultimate purpose of the economic pressure was to bring about a closed shop agreement, which would be lawful under both California law and the controlling federal statutes. The court further held that, although the federal act made unlawful the employer's signing of such an agreement before a requisite majority of his employees was obtained by the union, the statute did not proscribe the assertion of economic pressure by the unions upon both him and his employees, to compel their accession to union demands, before the time at which the employer might lawfully comply with them. This construction of the federal act was based, in part, upon an analogy made to the Shafer and McKay cases, *supra*, in which quite similar provisions in sections 921-923 of the California Labor Code were construed as protecting employees from improper employer influence but not as protecting the employer from economic pressure designed to bring about a closed shop agreement.

Since those decisions, however, the federal statute has been broadened to extend protection to the employer from such activities. (29 U.S.C. § 158(b)(2).) ██ The assertion of economic pressure to compel an employer to sign the type of agreement here involved is an unfair labor practice under section 8(b)(2) of the act. (*Cf. Great Atlantic & Pacific Tea Co.* (1949) 81 N.L.R.B. 1052.) Concerted labor activities for such a purpose thus were unlawful under the federal statute, and for that reason were not privileged under the California law. (*Cf. Park & Tilford I. Corp.* v. *International etc. of Teamsters,* 27 Cal.2d 599, 604 [165 P.2d 891, 162

A.L.R. 1426]; *Lillefloren* v. *Superior Court*, 31 Cal.2d 439, 440 [189 P.2d 265].)

It is argued, however, that the purpose of the concerted activities here complained of was to invite the employees to join the union. But the court found that the purpose of the picketing was not to induce the employees to join the unions but to compel the company to sign the proffered agreement or suffer destruction of its business. To hold that a contrary objective was intended would require this court to draw different inferences from the evidence which amply supports the finding of the trial court.

Finally, it is argued that the evidence does not support the finding as to the amount of damages. However, there is testimony that the employer, as a result of the picketing, was required to pick up and deliver its products at different yards, incurring the expense of additional man hours and trucking facilities. The record also shows that at least one prospective purchaser was induced to purchase materials at another yard because of the union activities, resulting in the loss of profits at least as great as the amount of damages awarded. This evidence amply supports the judgment insofar as damages are concerned.

The judgment is affirmed.

Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

In this case defendant unions were enjoined from peaceful picketing to organize plaintiffs' employees, have them join defendants and have defendants as their bargaining representatives; damages were also awarded to plaintiffs for the picketing. The trial court found that plaintiffs' business affected interstate commerce. Plaintiffs requested the National Labor Relations Board to hold an election to determine who should represent their employees. The board dismissed the proceeding. The majority opinion holds that the case is one in which the board would normally have jurisdiction and the state court would not, because defendants' activity was an unfair labor practice under the National Labor Management Relations Act (29 U.S.C.A. § 151 et seq.)* but, says

---

*That is clearly the law. (*Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546]; *Garner* v. *Teamsters, Chauffeurs, & Helpers Union No. 776*, 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228]; *United Const. Workers* v. *Laburnum Const. Corp.*, 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025]; *Building Trades Council* v. *Kinard Const. Co.*, 346 U.S. 933 [74 S.Ct. 373, 98 L.Ed. 423].)

the majority, in this case the state court has jurisdiction because the board refused to take jurisdiction by dismissing the representation proceedings and that federal law (Labor Management Relations Act) rather than state law is applicable; that under the federal law defendants' conduct being an unfair labor practice, the picketing was for an unlawful purpose. Hence defendants were properly enjoined and damages awarded against them. In other words, the state court is to enforce the federal law.

Those conclusions are fallacious for the following reasons: (1) The national board and the powers granted to it are an integral part of the federal law and that law is not intended to have application in a situation where the board plays no part; it is inescapable that the federal law is to be administered by the board, not by the state courts. (2) The board in refusing jurisdiction as it has power to do, has in effect determined that the federal law should not apply in this case. (3) It is neither feasible nor fair to apply the federal law. (4) There has not been such a refusal to exercise jurisdiction by the board here as to justify the conclusion that the state court has jurisdiction.

Before discussing those points it should be observed that under our law defendants' activity is lawful and hence neither damages nor injunctive relief is proper. The majority does not question this proposition. The rule was stated with the citation of many supporting authorities in *Park & Tilford I. Corp.* v. *International etc. of Teamsters,* 27 Cal.2d 599, 604 [165 P.2d 891, 162 A.L.R. 1426]: ''The closed shop is recognized as a proper objective of concerted labor activities, even when undertaken by a union that represents none of the employees of the employer against whom the activities are directed. (*McKay* v. *Retail etc. Union No. 1067,* 16 Cal.2d 311, 319, 322 [106 P.2d 373]; *Shafer* v. *Registered Pharmacists Union,* 16 Cal.2d 379, 382 [106 P.2d 403]; *C. S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389 [106 P.2d 414]; *Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92 [113 P.2d 689]; see *Fortenbury* v. *Superior Court,* 16 Cal.2d 405 [106 P.2d 411]; *Steiner* v. *Long Beach Local No. 128,* 19 Cal.2d 676, 682 [123 P.2d 20]; *Emde* v. *San Joaquin County etc. Council,* 23 Cal.2d 146, 155 [143 P.2d 20, 150 A.L.R. 916]; *Lisse* v. *Local Union,* 2 Cal.2d 312 [41 P.2d 314]; *In re Lyons,* 27 Cal.App.2d 293 [81 P.2d 190]; *J. F. Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581 [98 P. 1027, 16 Ann. Cas. 1165, 21 L.R.A.N.S. 550]; *Pierce* v. *Stablemen's Union,* 156 Cal. 70 [103 P. 324].) . . . A union may picket and

boycott an employer's business with the object of so discouraging public support of the business that the nonunion workers will face the prospect of the loss of their jobs. . . .

"Picketing and boycotting unquestionably entail a hardship for an employer when they affect his business adversely. The adverse effect upon the employer's business that may result from the competition among workers for jobs is comparable to the adverse effect on his business that may result from his own competition with other employers. It is one of the risks of business. (See *C. S. Smith Met. Market Co.* v. *Lyons*, 16 Cal.2d 389, 398 [106 P.2d 414].) 'The law . . . permits workers to organize and use their combined power in the market, thus restoring, it is thought, the equality of bargaining power upon which the benefits of competition and free enterprise rest. Accordingly, the propriety of the object of workers' concerted activity does not depend upon a judicial determination of its fairness as between workers and employers.' (4 Rest. Torts, p. 118.) . . .

"[I]n *Shafer* v. *Registered Pharmacists Union, supra,* the court stated: 'The argument is . . . made that it is absurd to suppose that these provisions were written with the intention of restraining the employer from influencing his employee, while at the same time conferring upon other individuals the right "to coerce" the same employee through the employer. But the right of workmen to organize for the purpose of bargaining collectively would be effectually thwarted if each individual had the absolute right to remain "unorganized," and using the term adopted by the appellants to designate the economic pressure applied against them through the employer, coercion may include compulsion brought about entirely by moral force. Certainly such compulsion is not made contrary to public policy by any statute of this state and is a proper exercise of labor's rights. (*Senn* v. *Tile Layers' Union,* 301 U.S. 468 [57 S.Ct. 857, 81 L.Ed. 1229]; *Lauf* v. *E. G. Shinner & Co.,* 303 U.S. 323 [58 S.Ct. 578, 82 L.Ed. 372]; *Fur Workers' Union No. 72* v. *Fur Workers' Union No. 21238* (1940), 105 F.2d 1, aff'd 308 U.S. 522 [60 S.Ct. 292, 84 L.Ed. 443].)'"

Speaking to the first point, it is clear that the national board and not a state court is to administer the federal law, at least in situations involving unfair labor practices. It is the forum which is to decide what steps, if any, should be taken to interpret initially the law, to make rules and regulations amplifying the law, to decide what is best for inter-

state commerce when activity in a labor controversy is claimed to interfere with it, to maintain uniformity in the treatment of cases, etc. The stated purpose of the federal law is to preserve certain rights and protect commerce (29 U.S.C.A. § 151.) The national board is created and it must report to Congress on the cases it has heard. (*Id.*, § 153.) It may make rules and regulations to carry out the act. (*Id.*, § 156.) Unfair labor practices are defined. (*Id.*, § 158.) The board "shall decide" ". . . whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of sections 151-166 of this title, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

"(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected." (*Id.*, § 159.) The board ". . . is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided,* That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter." (*Id.*, § 160.) If it is charged that an unfair labor practice is being committed the board "may" issue a complaint and shall decide the matter; *it* "may" ask a *federal* court for equitable relief in enforcing its decision, and its decision may be reviewed by a *federal* court. (*Id.*, § 160.) Immunity from prosecution is accorded witnesses who are compelled to testify before the board. (*Id.*, § 161.) These and many other provisions clearly envision that the federal law is not to operate without the national board. That proposition was pointed out in *Garner* v. *Teamsters, Chauffeurs, & Helpers Local Union No. 776,* 346 U.S. 485, 488 [74 S.Ct. 161, 98 L.Ed. 228]: "Congress has taken in hand this par-

ticular type of controversy where it affects interstate commerce. . . . [I]t has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary or appropriate for us to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. . . .

*"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order.* Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal board, precludes state courts from doing so. . . . And the reasons for excluding state administrative bodies from assuming control of matters expressly placed within the competence of the federal board also exclude state courts from like action.'' (Emphasis added.) And it is said in *Textile Workers Union of America* v. *Arista Mills Co.,* 193 F.2d 529, 533: '' 'It is perfectly clear, both from the history of the National Labor Relations Act and from the decisions rendered thereunder, that the purpose of that act was ''to establish a single paramount administrative or quasi-judicial authority in connection with the development of federal American law regarding collective bargaining''; that the only rights made enforceable by the act were those determined by the National Labor Relations Board to exist

under the facts of each case; and that the federal trial courts were without jurisdiction to redress by injunction or otherwise the unfair labor practices which it defined.' '' It should be clear, therefore, that the Labor Management Relations Act in dealing with unfair labor practices can only be enforced by the intervention of the national board, and that state courts are not in a position to apply that law.

In regard to the second point it is settled that the national board may refuse jurisdiction because interstate commerce is not sufficiently affected. ''Even when the effect of activities on interstate commerce is sufficient to enable the Board to take jurisdiction of a complaint, the Board sometimes properly declines to do so, stating that *the policies of the Act would not be effectuated* by its assertion of jurisdiction in that case.'' (Emphasis added; *National Labor Relations Board* v. *Denver Bldg. & Const. Trades Council,* 341 U.S. 675, 684 [71 S.Ct. 943, 95 L.Ed. 1284]; see also *Haleston Drug Stores, Inc.* v. *National Labor Relations Board,* 187 F.2d 418, cert. den., 342 U.S. 815 [72 S.Ct. 29, 96 L.Ed. 616]; *National Labor Relations Board* v. *Atlanta Metallic Casket Co.,* 205 F.2d 931; *National Labor Relations Board* v. *Stoller,* 207 F.2d 305; *National Labor Relations Board* v. *Guy F. Atkinson Co.,* 195 F.2d 141; note, 98 L.Ed. 221.) That power necessarily includes the power to determine that the federal law shall not apply in a particular case. When it refuses to take jurisdiction in a particular case because commerce is not affected and the ''*purposes* of the Act will not *be effectuated*'' by assertion of jurisdiction it has said that the case is not one for the application of the federal law and the state court should not override that decision as it has done in this case. It is true that the board is given power to cede jurisdiction to a state agency by agreement with such agency over any cases in any industry even though such cases may involve labor disputes affecting interstate commerce *unless,* however, the state's applicable ''statute'' is ''inconsistent'' with the federal act. (29 U.S.C.A. § 160(a).) There has been no cession here,* but the cession provision indicates that in such cases the state is in effect applying federal law because there can be no cession unless the federal and state law are consistent in both wording and interpretation. It thus may be inferred that the states are to apply the federal law only in the situation where the cession requirements are met. In other situations it is to apply its own law. When we come

---

*We have neither statute nor agency covering the field.

to the power of the federal board to refuse jurisdiction, as distinguished from cession, we find that power is to make such refusal because the *board finds* or states "that the *policies of the Act* would not be effectuated by" the board's assertion of jurisdiction (emphasis added). (See *National Labor Relations Board* v. *Denver Bldg. & Const. Trades Council, supra,* 341 U.S. 675, 684; and cases cited *supra,* together with the statement in the decision by the regional director in this particular case as to why jurisdiction was refused.) In other words, the board has the power under its authority to refuse jurisdiction—to decide that the "policies" declared by the provisions of the federal act, shall not apply in a particular case. The board having made that determination, it follows that the state court should not apply the federal act where the board has refused to act. Implicit also in the power of refusal is the board's conclusion that there is no need for uniformity of decision in order that businesses and labor in interstate commerce will be similarly treated. Moreover the board having exclusive jurisdiction generally, it also has exclusive jurisdiction to determine that interstate commerce is not sufficiently affected for the federal law to operate. The state court thus has no jurisdiction to decide to the contrary.

Thirdly, it is neither feasible nor fair to apply the federal law in this case. We have no agency such as a labor relations board in this state or anything like it. There are no facilities for conducting representation elections to determine whether a union shall be the collective bargaining agent for the employees, a question which may be basic in passing upon unfair labor practice charges. We have no body with the facilities nor expertness in the field. Our courts are at a disadvantage in sizing up the national picture—the impact upon interstate commerce—in deciding such controversies. The courts cannot make rules and regulations on the subject as may the national board. They cannot achieve the uniformity that is vital under the federal law, not having available to them, as does the national board, the nationwide circumstances.

The discrimination which results from the majority holding is manifest. An employer, although engaged in business affecting interstate commerce, yet not enough in the board's view to justify taking jurisdiction and applying the federal law, is essentially a local operator and such business should have applied to it the state law the same as its competitors whose business is purely intrastate. There is no rational basis for discriminating between the two classes of business or the

employees or unions concerned. Neither has any meaningful impact on interstate commerce and thus both should be amenable to the same law—the state law governing intrastate commerce—employer-employee-union relations.

In the foregoing discussion it has been assumed that there was a refusal by the national board to take jurisdiction of the case and that such refusal is ground for saying the state court has jurisdiction. The latter question has not been settled by the United States Supreme Court. In *Garner* v. *Teamsters, Chauffeurs, & Helpers Union No. 776, supra,* 346 U.S. 485, 488, the court held, as above indicated, that the board had exclusive jurisdiction but in discussing the question, mentioned that ''Nor is there any suggestion that respondents' plea of federal jurisdiction and pre-emption was frivolous and dilatory, or that the federal Board would decline to exercise its powers once its jurisdiction was invoked.'' In the later case of *Building Trades Council* v. *Kinard Const. Co., supra,* 346 U.S. 933, the court reversed (in a memorandum opinion) the state court's (Supreme Court of Alabama) affirmance of an injunction on the basis of the Garner case and in so doing stated: ''Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the state court could grant its own relief should the Board decline to exercise its jurisdiction.'' It was pointed out in the decision by the Alabama Supreme Court (*Kinard Const. Co.* v. *Building Trades Council, supra,* [258 Ala. 500] 64 So.2d 400, 402) that the board had made the general criteria statement, the same as it did here, as to the cases in which it would take jurisdiction. I interpret the Kinard case as holding, therefore, that such a general pronouncement as that made by the board here is not sufficient to show that the board would refuse to exercise jurisdiction. We have, therefore, the first question as to whether there has been a sufficient showing of refusal to exercise jurisdiction in this case, assuming such refusal would leave the matter open to state action. It would appear that there is not sufficient showing of refusal here. Although the regional director mentioned the scope of plaintiffs' business, it may well have been that his investigation revealed the facts as found by the court, that none of plaintiffs' employees desired representation by the unions and hence an election would be futile. Also the director said that no action would be taken at ''this time'' implying that

a change of conditions might bring a different result or that the charge of an unfair labor practice, a condition the court here found to exist, might result in board action. While it may have been that because of the smallness of the business here involved a representation election would not be ordered by the board and for the same reason a complaint for unfair labor practices would not be considered, it would appear that an effort should be made to have the board take jurisdiction of the precise question involved in the state court action, rather than the side issue of representation, before it may be said the board has refused to assume jurisdiction. That precise question is whether there has been an unfair labor practice for which a remedy may be obtained. We said in *In re De Silva*, 33 Cal.2d 76, 78 [199 P.2d 6]: "No distinction may be made here because the National Labor Relations Board had denied the company's petition for certification of a union representative. By the denial the board did not divest itself of jurisdiction to determine whether the defendants were committing unfair labor practices affecting interstate commerce which should be enjoined pursuant to the procedure provided by the act. Its exclusive jurisdiction over that matter had not been invoked by the plaintiffs."

Furthermore, there is also an insufficiency of a showing that the board would not act, in that, as pointed out by the regional director, plaintiffs could have appealed the dismissal of their representation petition to the national board in Washington, D. C. This they did not do. The dismissal may have been reversed. "There is no doubt that the administrative remedy is not exhausted where a party fails to appeal from an administrative decision to a higher tribunal within the administrative machinery, or, having filed an appeal, fails to await a determination thereon before his resort to the courts." (42 Am.Jur., Public Administrative Law, § 202; see *Woodard* v. *Broadway Fed. Sav. & Loan Assn.*, 111 Cal. App.2d 218 [244 P.2d 467] ; 2 Cal.Jur.2d, Administrative Law, § 187.) It is suggested, however, that an appeal would consume an amount of time that would render any remedy from the board ineffective, and that the criteria statement of the board above quoted indicates an appeal would be futile. Neither point has merit.

The delay is one of the incidents of the procedure before the board established by Congress to handle certain labor controversies. In a situation in which it was held that a federal court would not enjoin a state court from giving relief in a case under the Labor Management Relations Act

and the union had to follow the state action through the state appellate procedure and then apply to the Supreme Court, the court stated in regard to the delay caused by following the state appellate procedure, "Misapplication of this Court's opinions is not confined to the state courts, nor are delays in litigation peculiar to them. To permit the federal courts to interfere, as a matter of judicial notions of policy, may add to the number of courts which pass on a controversy before the rightful forum for its settlement is established. A district court's assertion of equity power or its denial may in turn give rise to appellate review on this collateral issue. There may also be added an element of federal-state competition and conflict which may be trusted to be exploited and to complicate, not simplify, existing difficulties." (*Amalgamated Clothing Workers* v. *Richman Brothers,* 348 U.S. 511 [75 S.Ct. 452, 457, 99 L.Ed. 600].)

The statement of criteria is no more reason to declare that an appeal to the board would be futile than that it makes an application to the regional director unnecessary. The same reasons, that is, that there should be a final determination by the director and board before it can be said the board has refused to exercise its jurisdiction, apply to the necessity for an appeal. The board as such has not acted until an appeal is taken and determined. The essence of state jurisdiction if the board refuses to act is an unequivocal final determination by the board that it will not act. Indeed, the board may on appeal determine that a representation election, the only thing asked by plaintiffs, is not appropriate because none of their employees belong or desire to join the union rather than that the policies of the federal law will not be effectuated by taking jurisdiction. As heretofore pointed out, the United States Supreme Court has in effect held that a general criteria statement is not enough to amount to a refusal by the board to take jurisdiction. (*Building Trades Council* v. *Kinard Const. Co., supra,* 346 U.S. 933.)

In the foregoing discussion I have assumed that the majority adheres to the state law as stated in *Park & Tilford, I. Corp.* v. *International etc. of Teamsters,* quoted *supra,* 27 Cal.2d 599, and the many cases there cited, and I trust there is no thought of overruling those cases without saying so although it applies the federal law by using the ritual of unlawful purpose.† However, it is not clearly pointed out

---

†Picketing for an unlawful purpose may be enjoined under state law; the purpose here is unlawful under the federal law, and hence enjoinable, but is lawful under state law and therefore not enjoinable.

that under our law the purpose of the picketing here involved is not unlawful or that the court is applying the federal law only because interstate commerce is affected.

The judgment should be reversed.

Gibson, C. J., and Traynor, J., concurred.

Appellants' petition for a rehearing was denied December 28, 1955. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.