**296 P.2d 733**

P. S. GUSS, d/b/a Photo Sound Products
Manufacturing Company, Plaintiff,

v.

UTAH LABOR RELATIONS BOARD and
United Steelworkers of America, CIO,
Defendants.

No. 8393.

Supreme Court of Utah.

April 30, 1956.

Fabian, Clendenin, Moffat & Mabey, Peter W. Billings, Salt Lake City, for plaintiff.

E. R. Callister, Atty. Gen., A. Wally Sandack, Salt Lake City, for defendants.

McDONOUGH, Chief Justice.

The plaintiff, P. S. Guss, d/b/a Photo Sound Manufacturing Company, is engaged in the manufacture of specialized equipment for the United States Air Force on a contract basis. The amount of these contracts with the government or its agencies totaled $152,025.50, and materials were purchased outside the state in an amount "a little less than $50,000." The finished products were shipped to Air Force Bases both within the state and without.

In December, 1953, the United Steelworkers of America, CIO, filed with the National Labor Relations Board, a petition for certification of that union as the bargaining representative for employees of the company. The company and the union entered into an agreement for a consent election to be conducted by the N.L.R.B., the agreement reciting that the employer is "engaged in commerce within the meaning of Section 2(6, 7)[1] of the National Labor Relations Act." The election was won by the union and the United Steelworkers of America, CIO, was certified by the N.L.R.B.

The union filed charges of violations under Section 8[2] of the National Labor Relations Act with the N.L.R.B., alleging unfair labor practices on the part of the employer. On July 21, 1954, the National Labor Relations Board declined to consider the charges of the union, stating:

"Further proceedings are not warranted, inasmuch as the operations of the company involved are predominately local in character and it does not appear that it would effectuate the policy of the Act to exercise jurisdiction."

Thereafter, the union filed substantially the same charges with the State Board, which, after a hearing on the charges, ordered Photo Sound to cease and desist from refusing to bargain collectively with the CIO and further directing that certain discharged employees be reinstated with compensation for the time for which they had been unemployed.

The employer obtained this Writ of Review for the purpose of questioning the jurisdiction of the Utah Labor Relations Board. The sole question before us is whether the state board may act in relation to a business admittedly engaged in interstate commerce and subject to the National Labor Relations Act and the National Labor Relations Board when that Board declines, upon the grounds stated, to exercise jurisdiction.

Apparently, the N.L.R.B. determined not to take jurisdiction of this matter on the basis of jurisdictional standards established by the Board, summarized in N.L.R.B. Press Release R–449, July 15, 1954. These standards, promulgated to relieve the federal agency of some of the weight of matters falling within its jurisdiction under the broad provisions of Section 2(6, 7) of the Act, select arbitrary lines determined by the nature of the business and its size. The difficulty here is that if the Utah Labor Board has no jurisdiction and the National Labor Board refuses to accept jurisdiction, the parties are left to their own devices in securing industrial harmony, although both the federal and local government have evidenced concern with labor relations in providing law and agencies to administer it.

Plaintiff cites to us language from many cases decided by the U. S. Supreme Court

---

1. 29 U.S.C.A. § 152(6, 7).

2. 29 U.S.C.A. § 158.

concerning whether or not Congress intend-end to pre-empt the entire field of labor-management relations within its power to do so under the commerce clause of the Constitution, but concedes that an instance of the refusal of the N.L.R.B. to take juris-diction, as here, has never been litigated be-fore that court.

Bethlehem Steel Co. v. New York State Labor Relations Board, 1947, 330 U.S. 767, 67 S.Ct. 1026, 1031, 91 L.Ed. 1234, involved the question of whether the state board could certify a foremen's union subject to the National Labor Relations Act where the national board had refused to certify that union as a matter of board policy. The court stated through Mr. Justice Jackson:

" * * * If the two boards attempt to exercise a concurrent jurisdiction to decide the appropriate unit of represen-tation, action by one necessarily denies the discretion of the other. The sec-ond to act either must follow the first, which would make its action useless and vain, or depart from it, which would produce a mischievous conflict. The State argues for a rule that would en-able it to act until the federal board had acted in the same case. But we do not think that a case by case test of fed-eral supremacy is permissible here. The federal board has jurisdiction of the industry in which these particular employers are engaged and has assert-ed control of their labor relations in general. It asserts, and rightfully so,

* * * its power to decide whether these foremen may constitute them-selves a bargaining unit. We do not believe this leaves room for the op-eration of the state authority asserted."

A similar result was reached in La Crosse Tel. Corp. v. Wisconsin Employment Rela-tions Board, 1948, 336 U.S. 18, 69 S.Ct. 379, 383, 93 L.Ed. 463 and the Supreme Court further emphasized its view that a state's certification of a bargaining unit in the absence of N.L.R.B. action created conflict in the field of labor relations of groups in interstate commerce:

" * * * We know that administra-tive practice also disposes of cases in which no order has been entered. Dis-position of controversies on an admin-istrative as distinguished from a formal basis will often reflect the attitudes of the National Board which have not been reduced to orders in those specific cases. A certification by a state board under a different or conflicting theory of representation may therefore be as readily disruptive of the practice under the federal act as if the orders of the two boards made a head-on collision. * * *"

On the basis of these two cases, the Court reversed a decision of the Wisconsin Su-preme Court, Plankinton Packing Co. v. Wisconsin Employment Relations Board, 255 Wis. 285, 38 N.W.2d 688 which held that the State Employment Relations Board had jurisdiction over a matter of *unfair*

*labor practices* in the absence of a federal board ruling, Plankinton Packing Co. v. Wisconsin Employment Relations Board, 1950, 338 U.S. 953, 70 S.Ct. 491, 94 L.Ed. 588.

However, certain inroads have been made upon the doctrine of exclusiveness of the National Board's jurisdiction under the familiar principle the Congress may determine how far its regulation of interstate commerce shall go, and when it. circumscribes its regulation, and occupies only a limited field, state regulation outside that limited field is not forbidden or displaced. Where the peace of the community is threatened by mass picketing, threats, property damage, and obstruction of streets, a state may act to enjoin such activities. Allen-Bradley Local No. 1111, etc., v. Wisconsin Employment Relations Board, 1942, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154. Recurrent, unannounced work stoppages are neither prohibited nor protected by the Taft-Hartley Act and hence a state may control that conduct. International Union, etc., v. Wisconsin Employment Relations Board, 1949, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651. See also Algoma Plywood & Veneer Co. v. Wisconsin Emp. Relations Board, 1949, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691. The Supreme Court has permitted an action for damages in a state court by an employer for injury done in a labor dispute, holding that there was no compensatory relief provided under the federal Act and hence no conflict with its provisions. United Const. Workers, etc., v. Laburnum Const. Corp., 1954, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025.

The most recent Supreme Court pronouncement in this area is found in Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, 75 S.Ct. 480, 488, 99 L.Ed. 546, wherein the court held that the exclusive primary jurisdiction of the National Labor Relations Board prevented a state court's enjoining certain activities, although the federal board had determined that no violation of Section 8(b) (4) (D) was committed by those activities. The employer, the petitioning party, included violations of other subsections of the act in its complaint before the court which had not been filed as charges before the N.L.R.B.; the Supreme Court held that the Board's decision was strictly limited to the charge before it and was not tantamount to a determination that no unfair labor practices existed under the Act. However, in holding that the state court had no jurisdiction to issue an injunction in this particular case, Mr. Justice Frankfurter concluded the opinion of the court:

"By the Taft-Hartley Act, Congress did not exhaust the full sweep of legislative power over industrial relations given by the Commerce Clause. Congress formulated a code whereby it outlawed some aspects of labor activities and left others free for the operation of economic forces. As to both categories, the areas that have been preempted by federal authority and there-

by withdrawn from state power are not susceptible of delimitation by fixed metes and bounds. Obvious conflict, actual or potential, leads to easy judicial exclusion of state action. Such was the situation in Garner v. Teamsters [C. & H. Local] Union, supra [346 S.Ct. 485, 74 S.Ct. 161, 98 L.Ed. 228]. But as the opinion in that case recalled, the Labor Management Relations Act, 'leaves much to the states, though Congress has refrained from telling us how much.' * * * This penumbral area can be rendered progressively clear only by the course of litigation. * * * "

Certain language contained in federal cases have presaged the present situation where the N.L.R.B. determined not to hear the matter presented to it because of policy or budgetary reasons. It has been recognized that the Board need not accept every controversy of which it has jurisdiction, Haleston Drug Stores v. National Labor Relations Board, 9 Cir., 187 F.2d 418. It was expressly mentioned that in the Garner case there was nothing to suggest that the federal Board would decline to exercise its powers once its jurisdiction was invoked, Garner v. Teamsters, C. & H. Union, 1953, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228. Suggestions in the Bethlehem Steel Co. case, supra, and particularly the separate opinion of Mr. Justice Frankfurter, in which he was joined by Mr. Justice Murphy

and Mr. Justice Rutledge, indicate that a different view is to be taken of state action where the N.L.R.B.'s determination not to hear a matter takes on the character of a decision, as in that case, and the situation where the N.L.R.B. refuses jurisdiction because of lack of funds or because of the view that the instant industrial relations are more appropriately a matter of state concern. The concurrence of Circuit Judge Pope in Capital Service, Inc., v. N.L.R.B., 9 Cir., 1953, 204 F.2d 848 presented the problem now before us without determining the question.

Under this state of the law concerning the National Labor Relations Act, state courts' rulings on the jurisdiction of state agencies to act after a declination of jurisdiction by the federal board, have both allowed and denied the state power. We take as our guides to the reasoning of the two views the cases of New York State Labor Relations Board v. Wags Transp. System, Sup., 130 N.Y.S.2d 731, affirmed 284 App. Div. 883, 134 N.Y.S.2d 608, and Garmon v. San Diego Building Trades Council, 45 Cal. 2d 657, 291 P.2d 1.

Although we might set forth factual differences between the two cases and perhaps reconcile them by distinguishing, our aim is merely to realize the two points of view in order to determine for this court the considerations involved. Both cases consider the provisions of Section 10(a) of the Taft-Hartley Act:[3]

3.   29 U.S.C.A. § 160(a).

"The Board is empowered, as herein- after provided, to prevent any person from engaging in any unfair labor practice * * * affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry* (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, *unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith.*" (Emphasis added.)

On whether or not this provision provided an exclusive means by which state agency might acquire jurisdiction over matters covered by the federal Act, the New York Court said [130 N.Y.S.2d 743]:

"In adopting the proviso to Section 10(a) the clear policy of Congress was to prevent the application of state law and procedure which did not conform to the Taft-Hartley Act. Congress was not unaware of the earlier practice of ceding jurisdiction to local boards. Indeed, it considered the method desirable. But limitations were placed upon such cession. Apparently Congress decided that it was more important to have no cession than to have it without compliance with the standards it prescribed. A secondary purpose may well have been to encourage state legislation to adopt the Taft-Hartley provisions.

"There have been no cession agreements concluded with the New York Board or any other. Criticism of the proviso to section 10(a) has come from all quarters including Senator Taft who proposed its partial relaxation in 1949. No such amendments have been adopted * * *.

"It follows quite logically that Congress provided in section 10(a) the sole means for transferring to state jurisdiction activities which are subject to the National Labor Relations Act, as amended.

"Thus the National Board has rightly decided that by virtue of the 1947 amendment it is without power to cede jurisdiction even over an essentially local business where the state statute does not impose the same requirements on unions seeking relief as does the National Act."

In support of this view it is important to note that this cession provision was added to the law subsequent to the Bethle-

.hem Steel Co. case; also, the Senate Labor Committee in the 2nd session of the 83rd Congress proposed amendments, which were defeated, to the Taft-Hartley Act which included a provision to allow state courts to assert jurisdiction where the N.L.R.B. determined that the effect on commerce is not sufficiently substantial to warrant the exercise of the Board's jurisdiction. The New York Court quoted from the Pittsburgh Rys. Co. Substation Operators & Maintenance Employees' Case, 357 Pa. 379, 54 A.2d 891, 174 A.L.R. 1045:

" 'The criterion to determine validity of the exercise of state power is not whether the agency administering federal law has acted upon the relationship in a given case; rather, it is whether Congress has asserted its power to regulate that relationship.' "

On the other hand, there are a great many equitable arguments in favor of allowing the state jurisdiction over industrial controversies where the federal Board refuses to do so. The federal Board has neither the money nor the time to administer the vast field entrusted to it under the Act and, with increasing interstate commerce, must select matters which it will handle on the basis of the effect upon national interests. See Mr. Justice Frankfurter's opinion in the Bethlehem Steel Co. case. If the Board determines that the business done is predominantly local in character, the interests affected must likewise be predominantly local and hence a matter for regulation by the state. If the federal Board declines jurisdiction and the state is prohibited from taking action, a large segment of industrial relations is unregulated, contrary to the purposes of both federal and state acts, and the parties are left to self-help which has already proved disastrous to economy and internal peace.

On these bases, the California Court in the Garmon case, supra, [45 Cal.2d 657, 291 P.2d 5] held:

"The reason for prohibiting state courts from acting in cases in which the Board has jurisdiction is to obtain uniform application of the substantive rules as expressed by Congress, and to avoid diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. * * * A remedy under federal laws available to an injured party may justify preemption of the field of labor relations, but when the application of that rule would result in the loss of all protection, there is no reason to bar state courts from providing relief. There is no conflict of jurisdiction when the federal board determines not to adjudicate the issues. Furthermore, a refusal to accept jurisdiction upon the ground that the issue presented does not sufficiently affect the national wel-

fare to justify the Board's attention, in effect, is a declaration that the national labor policy will not be jeopardized if the state assumes jurisdiction.

"When Congress enacted the applicable statutes, it must have been aware that an unfair labor practice may affect management and labor in a small business to the same extent as in a large industry. The difference is only the effect on the national labor and economic level. Certainly Congress did not intend to deprive a business having only a limited effect on interstate commerce of all protection in a labor-management controversy. By giving the Board discretion to accept or refuse jurisdiction, the legislative purpose must have been to give the state courts jurisdiction when the Board specifically determines that the controversy will not affect the national economy."

It appears from our research that both views are logically valid under the existing decisions of the U. S. Supreme Court, and it is conceivable that both views might be legally valid under different circumstances. It is interesting to note that the New York State Labor Relations Board has, since the Wags decisions, supra, declared its policy to take jurisdiction over those labor disputes in which it is evident that the National Labor Relations Board will decline to exercise its jurisdiction, under the view that the affirmation of that decision was strictly limited to instances where there is not a clear showing that the national board would have rejected jurisdiction. Raisch Motors, 35 LRRM 1631.

In the present case, there are no allegations that either party was deprived of rights which it might have obtained under the federal law had the N.L.R.B. heard the charges presented to it. There are, in fact, no intimations that the national Board would have disposed of the matter in a way other than that in which the state board did. No substantive conflicts between the provisions of the Taft-Hartley Act concerning unfair labor practices, 29 U.S.C.A. § 158, and the Utah Code, U.C.A. 1953, 34–1–8, have been alleged nor do any appear with reference to the particular charges involved, i. e., discrimination against union employees and refusal to bargain collectively with certified representatives.

Since we discover no conflict with federal authority in this case, and since the values of immediate legal supervision of labor controversies within this company can only be maintained through state action, we hold that the Utah Labor Relations Board had jurisdiction in this matter and affirm its decision and order. Costs to defendants.

CROCKETT, WADE, HENRIOD, and WORTHEN, JJ., concur.