JAMES M. WILLARD v. P. T. HUFFMAN, INDIVIDUALLY AND
P. T. HUFFMAN TRANSFER, INC.

(Filed 12 June, 1959.)

**1. Master and Servant § 2e:  Courts § 18— State Court has jurisdiction of action in tort for discharge in violation of Right to Work Act even though employer's business affects interstate commerce.**

Where the National Labor Relations Board has declined to exercise jurisdiction in the matter because the amount of interstate and inter-

lining business carried on by the employer is less than the jurisdictional amount fixed by the Board, our State Court has jurisdiction of an action in tort brought by an employee to recover for his discharge because of his membership in a labor union in violation of the State Right to Work Act, G.S. 95-81, G.S. 95-83, irrespective whether the conduct of the employer was an unfair labor practice within the purview of the National Labor Relations Act and notwithstanding that the employer's interstate or interlining business is such as to constitute it an industry affecting interstate commerce within the purview of the Federal decisions.

**2. Constitutional Law § 24—**

A party whose rights have been infringed contrary to law is entitled to his day in court.

APPEAL by defendants from *Crissman, J.,* January Civil Term 1959 of GUILFORD (Greensboro Division).

This is a civil action instituted by the plaintiff to recover for his alleged wrongful discharge by the defendants in violation of G.S. 95-81.

This case, on the same pleadings and on substantially the same evidence, was before this Court at the Fall Term 1957 and the opinion of the Court is reported in *Willard v. Huffman,* 247 N.C. 523, 101 S.E. 2d 373.

The facts will not be restated herein except as may be necessary to an understanding of the appeal.

Issues were submitted to the jury and answered as follows:

"1. Was the plaintiff discharged by the defendants because he did not abstain or refrain from membership in a labor union or labor organization? Answer: Yes.

"2. If so, what amount of damages, if any, did the plaintiff sustain by being so discharged? Answer: $1,000.00."

Judgment was entered on the verdict and the defendants appeal, assigning error.

*Robert S. Cahoon for plaintiff, appellee.*
*McLendon, Brimm, Holderness & Brooks for defendants appellant.*

DENNY, J. The determinative question posed on this appeal is whether or not the courts of North Carolina have jurisdiction to adjudicate a claim for damages resulting from an unfair labor practice, under the provisions of our Right to Work Act, Chapter 328, Session Laws of 1947, codified as General Statutes of North Carolina, Chapter 95, Sections 78 through 84, where the employer is engaged in a business that affects interstate commerce.

While the previous appeal was pending in this Court, the defendant appellants filed a motion to remand to the Superior Court of Guilford

County for the purpose of determining the identical question now presented. We granted a new trial for errors committed in the court's charge to the jury, and pointed out that since a new trial was being granted, the defendants could raise the question of jurisdiction in the trial court, as requested in their motion to remand. Hence, we did not rule on the jurisdictional question now before us. *Willard v. Huffman, supra.*

The plaintiff was discharged from his employment with defendants on 18 January 1956, and it has been duly determined by the jury in the trial below that the discharge was on the ground prohibited by G.S. 95-81, which reads as follows: "No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment."

The section of our Right to Work Act on which the plaintiff bottoms his action for damages is G.S. 95-83, which provides: "Any person who may be denied employment or be deprived of continuation of his employment in violation of Sections 95-80, 95-81 and 95-82 or of one or more of such sections, shall be entitled to recover from such employer and from any other person, firm, corporation, or association acting in concert with him by appropriate action in the courts of this State such damages as he may have sustained by reason of such denial or deprivation of employment."

Our Right to Work Act was upheld by this Court in *S. v. Whitaker*, 228 N.C. 352, 45 S.E. 2d 860. *Certiorari* was allowed by the Supreme Court of the United States and the case was heard and decided with a Nebraska case, *Lincoln Fed. L. U. v. Northwestern I. & M. Co.*, and the decision of this Court was upheld. See *Whitaker, et al, v. State of North Carolina*, 335 U.S. 525, 93 L. Ed. 212, 6 A.L.R. 2d 473.

On 19 January 1956, the day after his discharge, the plaintiff herein filed a charge against the corporate defendant with the National Labor Relations Board (hereinafter referred to as NLRB) for his alleged wrongful discharge in violation of Section 158 (a), subsections (1) and (3) of the National Labor Relations Act, asserting that its unfair labor practices were unfair labor practices affecting commerce within the meaning of the Act.

It appears from the record that on the same date, 19 January 1956, the NLRB informed the corporate defendant of the charges that had been filed against it and requested the defendant to fill out a questionnaire on "commerce data." According to this questionnaire, the defendant had done a dollar volume of business during the year

preceding that date, of approximately $100,000, twenty per cent of which involved interstate movements.

Prior to the time of filing the aforesaid charges with the NLRB, the Board had adopted certain jurisdictional criteria which determined whether or not it would accept jurisdiction in unfair labor practice and representation cases. Under the rules in force and effect at the time James M. Willard filed charges against the employer, the Board accepted jurisdiction in unfair labor practice cases involving trucking companies operating interstate and intrastate, only if the interstate revenue amounted to $100,000, or if the total of interstate and "interlining" revenue amounted to $100,000.

Under date of 2 March 1956 the plaintiff was notified by the NLRB that it was refusing to issue complaint in the case because "further proceedings are not warranted inasmuch as the operations of the employer do not appear to meet the required standards to warrant the Board's exercise of its jurisdiction in this matter."

None of the corporate defendant's trucks operate across State lines, the "interstate" aspects of its business coming from "interline" operations that is, where a cargo is transferred by the corporate defendant to another carrier who carries the cargo out of the State.

In the trial below, the court, in the absence of the jury, heard testimony without objection as to the character of the corporate defendant's business. Defendant P. T. Huffman testified that the company's gross income from the transportation of freight in 1955 was $119,334.44, eighteen per cent of that amount being in interstate commerce; that in 1956 its gross receipts from that source were $110,158.83, of which amount 31.1 per cent was in interstate commerce. The trial judge declined to make any findings of fact or conclusions of law relative to the interstate aspect of the corporate defendant's business. The defendants excepted to the refusal of the court to find facts and make its conclusions of law in this respect.

It is obvious that the corporate appellant was not engaged in interstate commerce as such on 18 January 1956. However, if its operations were such as to affect commerce, the Labor Management Relations Act applies. USCA, Title 29, section 142, provides as follows: "(1) The term 'industry affecting commerce' means any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce."

In light of the rulings in *Guss v. Utah Labor Relations Board*, 353 U.S. 1, 1 L. Ed. 2d 601, *Amalgamated Meat Cutters v. Fairlawn Meats*, 353 U.S. 20, 1 L. Ed. 2d 613, and similar decisions, it would seem to

be clear that the corporate defendant's interline transportation of freight did affect interstate commerce. Even so, the volume of its business in interstate commerce fell far below that required by the NLRB before it will exercise jurisdiction in such cases.

It is obvious that if the lower court had no jurisdiction, neither does this Court. Moreover, if the subject matter of this action has been pre-empted by the National Labor Relations Act, as amended, as contended by the appellants, then the court below should have allowed the defendants' motion for judgment as of nonsuit, otherwise not.

We shall not undertake to cite and discuss all the cases cited and relied upon by the respective parties in their briefs. However, we shall undertake to discuss those we think particularly applicable to the facts before us. It must be conceded, however, that many of the cases bearing on the question before us seem to be in irreconcilable conflict.

In the case of Local Union No. 10, *A. F. of L. v. Graham*, 345 U.S. 192, 97 L. Ed. 946, the unions picketed a construction project because some of the subcontractors employed nonunion help. Although the picketing was peaceful, the Virginia Court enjoined it on the ground that it was carried on for purposes in conflict with the Virginia "Right to Work" statute. On appeal, the Supreme Court of the United States said: "The policy of Virginia which is expressed in its Right to Work Statute is summarized as follows by its highest court: 'It provides in substance that neither membership nor nonmembership in a labor union shall be made a condition of employment; that a contract limiting employment to union members is against public policy; and that a person denied employment because he is either a member of a union or not a member of a union shall have a right of action for damages.' *Finney v. Hawkins*, 189 Va. 878, 880, 54 S.E. 2d 872, 874.

"Based upon the findings of the trial court, we have a case in which picketing was undertaken and carried on with at least one of its substantial purposes in conflict with the declared policy of Virginia. The immediate results of the picketing demonstrated its potential effectiveness, unless enjoined, as a practical means of putting pressure on the general contractor to eliminate from further participation all nonunion men or all subcontractors employing nonunion men on the project.

"Assuming the above conclusions to have been established, petitioners still contend that the injunction in this case was inconsistent with the Fourteenth Amendment to the Constitution of the United States. On the reasoning and authority of our recent decisions, we

reaffirm our position to the contrary." (Citations omitted.) The judgment of the Supreme Court of Appeals of Virginia was affirmed.

In *Garner v. Teamsters C. & H. Union*, 346 U.S. 485, 98 L. Ed. 228, a labor union peacefully picketed the loading platform of an interstate trucking company for the purpose of inducing the employees of the company to join the union. No labor dispute was in progress and at no time did the company object to its employees joining the union. None of the pickets were employees of the company. Drivers for other carriers refused to cross the picket line and as a consequence the company's business fell off as much as ninety-five per cent.

A Pennsylvania court of equity enjoined the union's conduct as being in violation of the State Labor Relations Act. However, the Supreme Court of Pennsylvania reversed on the ground that the union's activities fell within the jurisdiction of the NLRB. On appeal, in upholding the decision of the Supreme Court of Pennsylvania, the United States Supreme Court said: "The National Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.

"This is not an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is 'governable by the state or it is entirely ungoverned.' "

The Court further said: " * * * it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. The question then is whether the State, through its courts, may adjudge the same controversy and extend its own form of relief.

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. * * * A multiplicity

of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so. * * * And the reasons for excluding state administrative bodies from assuming control of matters expressly placed within the competence of the federal Board also exclude state courts from like action. * * *'' (Citations omitted.)

In the case of *United Const. Workers, et al v. Laburnum Const. Corp.,* 347 U.S. 656, 98 L. Ed. 1025, while the construction corporation was performing work in Kentucky, agents of the labor unions involved demanded that the contractor's employees join one of the defendant unions. Upon refusal of the plaintiff contractor and many of its employees, the unions' agents threatened plaintiff and its employees with violence to such degree that plaintiff was compelled to abandon all its projects in the area. An action in tort was brought by the plaintiff construction company against the unions in the State of Virginia. The trial court awarded compensatory damages in the sum of $175,437.19 and punitive damages of $100,000. The compensatory damages were reduced to $29,326.09. Judgment was entered for $129,326.09. The Supreme Court of Appeals of Virginia affirmed. *Certiorari* was allowed and the Supreme Court of the United States affirmed. Justice Burton, speaking for the Court, said: "The question before us is whether the Labor Management Relations Act, 1947, has given the National Labor Relations Board such exclusive jurisdiction over the subject matter of a common-law tort action for damages as to preclude an appropriate state court from hearing and determining its issues where such conduct constitutes an unfair labor practice under that Act. For the reasons hereafter stated, we hold that it has not. * * * In the *Garner* case, Congress had provided a federal administrative remedy, supplemented by judicial procedure for its enforcement, with which the state injunctive procedure conflicted. Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct. We see no substantial reason for reaching such a result. The contrary view is consistent with the language of the Act and there is positive support for it in our decisions and the legislative history of the Act."

And, further, "To the extent that Congress prescribed preventive procedure against unfair labor practices, that case *(Garner)* recognized that the Act excluded conflicting state procedure to the same end. To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated. The care we took in the *Garner* case to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived. The primary nature of claims for damages under state law also distinguishes them in a measure from the public nature of the regulation of future labor relations under federal law."

After pointing out that the Labor Management Relations Act "sets up no general compensatory procedure except in such minor supplementary ways as the reinstatement of wrongfully discharged employees with back pay," the Court went on to say: "If Virginia is denied jurisdiction in this case, it will mean that where the federal preventive administrative procedures are impotent or inadequate, the offenders, by coercion of the type found here, may destroy property without liability for the damage done."

In *Guss v. Utah Labor Relations Board, supra,* a labor union filed charges of violation of the National Labor Relations Act, Title 29, USCA, section 158 with the NLRB, alleging unfair labor practices on the part of the employer whose business affected interstate commerce. The Board declined to consider the charges on the ground that the operations of the employer involved were predominantly local in character. Thereafter, the union filed substantially the same charges with the Utah Labor Relations Board, pursuant to the Utah Labor Relations Act. The state board granted relief and, on writ of review, its decision was affirmed by the Supreme Court of Utah (5 Utah 2d 68, 296 P. 2d 733). *Warren, C. J.,* in speaking for the Supreme Court of the United States said: "The question presented by this appeal * * * is whether Congress, by vesting in the National Labor Relations Board jurisdiction over labor relations matters affecting interstate commerce, has completely displaced state power to deal with such matters where the Board has declined or obviously would decline to exercise its jurisdiction but has not ceded jurisdiction pursuant to the proviso to section 10 (a) of the National Labor Relations Act."

The Court pointed out that the NLRB has not ceded jurisdiction in any cases to the Utah Board pursuant to section 10 (a) of the

National Act, and then said: "We hold that the proviso to section 10 (a) is the exclusive means whereby States may be enabled to act concerning the matters which Congress has entrusted to the National Labor Relations Board. * * *

"We are told by appellee that to deny the state jurisdiction here will create a vast no-man's-land, subject to regulation by no agency or court. We are told by appellant that to grant jurisdiction would produce confusion and conflict with federal policy. Unfortunately, both may be right. We believe, however, that Congress has expressed its judgment in favor of uniformity. Since Congress' power in the area of commerce among the State is plenary, its judgment must be respected whatever policy objections there may be to creation of a no-man's-land. * * *"

In the case of *Amalgamated Meat Cutters v. Fairlawn Meats, supra,* a companion case to *Guss v. Utah Labor Relations Board, supra,* and decided contemporaneously, the Ohio Court of Common Pleas enjoined the union from picketing the employer, from trespassing upon its premises, and from exerting secondary pressure upon its suppliers. The union objected to the jurisdiction of the court on the ground that the jurisdiction of the NLRB was exclusive. The Ohio Court of Appeals continued the injunction (99 Ohio App. 517, 135 N.E. 2d 689) and the Ohio Supreme Court dismissed the union's appeal (164 Ohio St. 285, 130 N.E. 2d 237). The Supreme Court of the United States vacated the judgment below and remanded the case. The Court said: "As one of the reasons for finding the picketing unlawful, the Court of Appeals recited this fact, and 'trespassing upon plaintiff's property' is one of the activities specifically enjoined. Whether a State may frame and enforce an injunction aimed narrowly at a trespass of this sort is a question that is not here. Here the unitary judgment of the Ohio court was based on the erroneous premise that it had power to reach the union's conduct in its entirety. Whether its conclusion as to the mere act of trespass would have been the same outside of the context of petitioner's other conduct we cannot know. The judgment therefore is vacated and the case remanded for proceedings not inconsistent with this opinion."

In the case of *San Diego Bldg. Trades v. Garmon,* 353 U.S. 26, 1 L. Ed. 2d 618, likewise decided on the same date as the two last cited cases, the California Superior Court enjoined unions, not representing the majority of the employees, from picketing or exerting secondary pressure in support of their demands for a union shop agreement unless and until one or another of the unions had been designated as the collective bargaining representative of the employees; the court

also awarded damages. The California Supreme Court affirmed (45 Cal. 2d 657, 291 P. 2d 1), expressing the view that the NLRB's declination, in pursuance of its jurisdictional policy, to entertain the unions' representation petition, left the State free to act.

The Supreme Court of the United States vacated the judgment entered below and held that a State court has no power to enjoin a union, not representing a majority of the employees, from peaceably picketing an employer engaged in interstate commerce for the purpose of compelling him to sign a contract including a union shop provision, although the N L R B had declined to exercise jurisdiction. With respect to damages, the Court said: "Respondents, however, argue that the award of damages must be sustained under *United Const. Workers v. Laburnum Const. Corp.* 347 U.S. 656, 98 L. Ed. 1025, 74 S. Ct. 833. We do not reach this question. The California Supreme Court leaves us in doubt, but its opinion indicates that it felt bound to 'apply' or in some sense follow federal law in this case. There is, of course, no such compulsion. Laburnum sustained an award of damages under state tort law for violent conduct. We cannot know that the California court would have interpreted its own state law to allow an award of damages in this different situation. We therefore vacate the judgment and remand the case to the Supreme Court of California for proceedings not inconsistent with this opinion and the opinions in *Guss v. Utah Labor Relations Board* and *Amalgamated Meat Cutters v. Fairlawn Meats, Inc.,* both (U.S.) *supra.*"

In *International Asso. Machinists v. Gonzales,* 356 U.S. 617, 2 L. Ed. 2d 1018, Marcos Gonzales, a labor union member, claiming to have been expelled from membership in violation of his rights under the constitution and by-laws of the union, was ordered reinstated and awarded damages for lost wages and physical and mental suffering by a trial court in California. The judgment was affirmed by the California District Court of Appeals (142 Cal. App. 2d 207, 298 P. 2d 92), and the Supreme Court of California denied rehearing. On *certiorari* to the California District Court of Appeals, the United States Supreme Court affirmed the judgment below. *Justice Frankfurter,* speaking for the Court, said: " * * * the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied. The proviso to section 8 (b) (1) of the Act states that 'this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *.' 61 Stat. 141, 29 U.S.C. section 158 (b) (1). * * *

"No radiation of the Taft-Hartley Act requires us thus to mutilate the comprehensive relief of equity and reach such an incongruous adjustment of federal-state relations touching the regulation of labor. The National Labor Relations Board could not have given respondent the relief that California gave him according to its local law of contracts and damages. Although if the unions' conduct constituted an unfair labor practice the Board might possibly have been empowered to award back pay, in no event could it mulct in damages for mental or physical suffering. And the possibility of partial relief from the Board does not, in such a case as is here presented, deprive a party of available state remedies for all damages suffered. See *International Union, United A.A.A.I.W. v. Russell,* 356 U.S. 634, 2 L. Ed. 2d 1030, 78 S. Ct. 932."

In the case of *International Union, U.A.A. & A.I.W. v. Russell,* 356 U.S. 634, 2 L. Ed. 2d 1030, Russell, an employee who was denied access to his employer's plant by a striking union which engaged in mass picketing and threats of violence, brought an action against the union in Circuit Court, Morgan County, Alabama, claiming compensatory damages for loss of earnings and mental anguish, plus punitive damages. The union filed a plea to the jurisdiction of the court, alleging that the N L R B had exclusive jurisdiction. This plea was denied and Russell was awarded a verdict including punitive damages. The Supreme Court of Alabama affirmed the trial court's jurisdiction and also affirmed on the merits (264 Ala. 456, 88 So. 2d 175, 62 A.L.R. 2d 669).

On *certiorari,* the Supreme Court of the United States reviewed the case. Argument was made that since the NLRB could award back pay, the court was pre-empted by the federal act. However, the Court rejected this contention, saying in part: "In the instant case, there would be no 'conflict' even if one forum awarded back pay and the other did not. There is nothing inconsistent in holding that an employee may recover lost wages as damages in a tort action under State law, and also holding that the award of such damages is not necessary to effectuate the purposes of the Federal Act. * * * We conclude that an employee's right to recover, in the State courts, *all* damages caused him by this kind of tortious conduct, cannot fairly be said to be pre-empted without a clearer declaration of congressional policy than we find here."

In the second appeal of *San Diego Bldg. Trades v. Garmon* (decided 20 April 1959) ...... U.S. ......, 3 L. Ed. 2d 775, which was remanded on the question of damages, the Court in effect held that damages could not be assessed by a State court as a result of peace-

ful picketing, and said: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by section 7 of the Taft-Hartley Act, or constitute an unfair labor practice under section 8, due regard for the federal enactment requires that State jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by State law. * * *"

*Justice Frankfurter* wrote the majority opinion for the Court and, among other things, said: "What we said in *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, deserves repetition, because the consideration there outlined guide this day's decision: 'By the Taft-Hartley Act, Congress did not exhaust the full sweep of legislative power over industrial relations given by the Commerce Clause. Congress formulated a code whereby it outlawed some aspects of labor activities and left others free for the operation of economic forces. As to both categories, the areas that have been pre-empted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds. Obvious conflict, actual or potential, leads to easy judicial exclusion of state action. Such was the situation in *Garner v. Teamsters Union, supra.* But as the opinion in that case recalled, the Labor Management Relations Act "leaves much to the states, though Congress has refrained from telling how much." 346 U.S. at 488. This penumbral area can be rendered progressively clear only by the course of litigation.' * * *

"As we pointed out the other day, 'the statutory implications concerning what has been taken from the States and what has been left to them are of a *Delphic* nature, to be translated into concreteness by the process of litigating elucidation.' *International Assn. of Machinists v. Gonzales,* 356 U.S. 617, 619. * * *

"At times it has not been clear whether the particular activity regulated by the States was governed by section 7 or section 8 or was, perhaps, outside both these actions. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. * * *

"When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting. However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democra-

cy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. * * *

"When an activity is arguably subject to section 7 or section 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of State interference with national policy is to be averted. * * *

"Since the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of section 7 or section 8 of the Act, the State's jurisdiction is displaced."

It is quite clear, since the NLRB had declined to exercise jurisdiction in this case, if the courts of this State are not open for the adjudication of the plaintiff's claim for damages in tort, based on his wrongful discharge, pursuant to the provisions of our Right to Work Act, then there is no forum in either the federal or state judicial systems where the plaintiff can have his rights litigated and determined. This runs counter to our conception of justice and it makes no difference whether Congress intended to permit the creation of this no-man's-land by giving the NLRB exclusive jurisdiction on the one hand, but not requiring its exercise on the other, or whether this vacuum has been the result of judicial interpretation is beside the point, such a situation affecting the rights of so many employers and employees ought not to be permitted to continue. Congress ought to correct it. Unnecessary delay in correcting such a situation in the field of labor-management relations is indefensible. A citizen, whether employer or employee, is entitled to his day in court if his rights have been infringed upon contrary to law.

Our courts, in the case before us, are not seeking to administer the provisions of section 158 (a), subsections (1) and (3), of the Labor Relations Act, Title 29, U.S.C.A.; they seek only to enforce the provisions of our own Right to Work Act, provisions which have no counterpart in the National Labor Relations Act.

Moreover, this Court does not seek to evade any clear mandate of the Supreme Court of the United States, whether it agrees with that Court's opinions or not. *Constantian v. Anson County*, 244 N.C. 221, 93 S.E. 2d 163. On the other hand, we do not hasten to surrender voluntarily any right which we believe we have both the legal right and duty to uphold and enforce.

As heretofore pointed out, our Right to Work Act has been held to be constitutional by this Court and by the Supreme Court of the

United States. *Whitaker, et al v. State of North Carolina, supra.*
Certainly, Congress did not undertake to provide for the adjustment
of unfair labor practices applicable exclusively to intrastate business.
This view, we think, it supported by section 164 (b), Title 29, USC
A, of the Taft-Hartley Act, which reads as follows: "Nothing in this
subchapter shall be construed as authorizing the execution or appli-
cation of agreements requiring membership in a labor organization
as a condition of employment in any State or Territory in which such
execution or application is prohibited by State or Territorial law."

We do not need any exemption from the provisions of the Taft-
Hartley Act with respect to a union shop agreement where the em-
ployer and his employees are engaged exclusively in intrastate busi-
ness which does not affect interstate commerce. Moreover, it was said
in *United Const. Workers v. Laburnum Const. Corp., supra,* that
"Congress had neither provided nor suggested any substitute for the
traditional state court procedure for collecting damages for injuries
caused by tortious conduct." The Court then went on to say: "To
the extent that Congress prescribed preventive procedure against
unfair labor practices * * * the Act excludes conflicting State proce-
dure to the same end. To the extent, however, that Congress has not
prescribed procedures for dealing with the consequences of tortious
conduct already committed, there is no ground for concluding that
existing criminal penalties or liabilities for tortious conduct have
been eliminated." And there has been no amendment to the Taft-
Hartley Act since the foregoing decision was filed on 7 June 1954. It
follows, therefore, if the N L R B has not been given jurisdiction of
the subject matter in such an action, it has nothing to cede to a State
agency pursuant to the provisions of Section 10 (a) of the National
Labor Relations Act. See Section 160 (a), Title 29, USCA, and *Guss
v. Utah Labor Relations Board, supra.*

In view of what was said in Local Union No. 10, *A. F. of L. v.
Graham, supra; United Const. Workers, et al v. Laburnum Const.
Corp., supra; International Asso. Machinists v. Gonzales, supra;* and
*International Union, U.A.A. & A.I.W. v. Russell, supra,* relative to
the right to recover damages for tortious conduct, irrespective of
whether or not such conduct was an unfair labor practice, in our
opinion the judgment of the court below should be upheld, and we
so hold.

No error.