ULYSSES VERNON BEASLEY, JAMES A. KIGER, EMIDIO J. BASSETTI, AND JOE W. JONES v. FOOD FAIR OF N. C., INC. AND RAY F. MESSICK

No. 66

(Filed 26 January 1973)

1. **Master and Servant §§ 10, 15— discharge of supervisors for union membership — State regulation**

    Congress and the federal courts have adopted a national industrial relations policy which gives an employer the right to discharge his supervisor for union membership, and the State is precluded from interfering with that policy.

2. **Master and Servant §§ 10, 15— discharge for union membership — right-to-work statute — applicability to supervisors**

    Where plaintiff meat market managers as supervisors sought to invoke provisions of the N. C. Right-to-Work Law to recover damages against their employer for their allegedly unlawful discharge based solely upon union membership, the doctrine of federal preemption applied, and the state court was without jurisdiction over the subject matter of the controversy. G.S. 95-81; G.S. 95-83.

ON *certiorari* to review the decision of the Court of Appeals reported in 15 N.C. App. 323, 190 S.E. 2d 333 (1972), which reversed summary judgment for defendant entered by *Gambill, J.,* at the 28 February 1972 Session of FORSYTH Superior Court.

Plaintiffs jointly brought this action asking for $500,000 actual damages and $1,000,000 punitive damages without separation of damages as to each plaintiff. They allege that they were unlawfully discharged because of their support of and membership in the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, in violation of North Carolina's Right-to-Work Law, G.S. 95-81. Plaintiffs further allege that by reason of G.S. 95-83 they were entitled to damages, both punitive and otherwise.

Defendants filed a motion to dismiss, motion for judgment on the pleadings, and plea in abatement, alleging that the National Labor Relations Board had exclusive jurisdiction, precluding the State court's consideration for the reason that plaintiffs were managers of the meat markets in defendant's stores or, in the alternative, plaintiffs as supervisors did not come within the provisions of G.S. 95-78, G.S. 95-81, and G.S. 95-83. Defendants further contend that although the complaint alleged violations as to all four plaintiffs, the damages were alleged collectively without alleging individual damages; and, furthermore, in no event are punitive damages recoverable under G.S. 95-83.

Prior to bringing this action, plaintiffs filed charges with the National Labor Relations Board claiming that the discharges were unlawful under the National Labor Relations Act as amended. The Regional Director of the National Labor Relations Board dismissed the charges for the reason that plaintiffs were supervisors and not employees and, therefore, not entitled to protection of the Act. Plaintiffs appealed the Regional Director's decision, but the appeal was denied by the Board's General Counsel for the same reason.

Ray F. Messick, president of Food Fair of N.C., Inc., and one of the defendants in this action, filed an affidavit stating:

"Each of the plaintiffs in this action was at the times alleged a manager of the meat market of one of the stores owned and operated by the defendant, Food Fair of N. C., Inc. There is a meat market at each of the corporate defendant stores and the plaintiffs, as meat market managers at their respective stores, were not responsible to either the store manager or the assistant manager. The meat markets were operated independently and each of the plaintiffs had full supervisory authority over said meat market and the

employees in the meat market. Each of the plaintiffs was supervisor of his respective meat market and its employees and had authority to hire, fire or discipline meat market employees, responsibility for directing them and adjusting their grievances by the use of their independent judgment.

"The plaintiffs, as meat market managers, independently and on their own authority scheduled regular hours and overtime hours for meat market employees. Each of the plaintiffs, as meat market managers, exercised their authority to grant time off and to tell meat market employees what to do in their employment in the meat market. Each of the plaintiffs were paid more than other employees, were provided more life insurance by the defendant corporation, got more sick leave and a larger Christmas bonus, as well as a year-end bonus, which the other meat market employees did not receive.

"On June 3, 1971, the Regional Director of the Eleventh Region of the National Labor Relations Board issued an order adjudicating Ulysses Vernon Beasley, James A. Kiger, Emidio J. Bassetti and Joe W. Jones, plaintiffs in this case, as supervisors. This order also included all other meat managers of the defendant corporation."

On 28 February 1972 Gambill, J., entered the following order:

"THIS CAUSE having been calendared for hearing on the Motion Docket at the February 21, 1972 week of Civil Court in and for Forsyth County, and having come on for hearing before the undersigned Judge of the Superior Court upon the defendants' Motion To Dismiss, Motion For Judgment On The Pleadings, and Plea In Abatement, and all parties having been represented by counsel at said hearing before the undersigned Judge and having filed briefs and presented arguments for their respective clients and positions in the matter;

"And the Court having considered the Motion To Dismiss, Motion For Judgment On The Pleadings, and Plea In Abatement; and the parties having stipulated that each of the plaintiffs in this cause was at all times complained

of a supervisor of Food Fair of N. C., Inc.; and the defendants having further filed Affidavit of Ray F. Messick, dated February 23, 1972, without objection; and the Court having further considered the Motions filed as a Motion For Summary Judgment as provided under Rule 12(c) and Rule 56;

"And the Court, having heard the matter and the arguments of counsel for all parties in the same, being of the opinion that the defendants' Motion For Judgment On The Pleadings and To Dismiss should be allowed for that the plaintiffs have failed to state a claim upon which relief can be granted; and the Court being further of the opinion that the defendants are entitled to summary judgment in their favor pursuant to Rule 56 in that the pleadings, stipulation and affidavits show that there is no genuine issue as to any material fact and that the defendants are so entitled to judgment as a matter of law; and the parties having agreed that the Judgment be presented on this date;

"Now, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED that the defendants' Motion For Judgment On The Pleadings and To Dismiss is hereby allowed; that the Court has further considered said Motion as a Motion For Summary Judgment and that the defendants' Motion For Summary Judgment is hereby allowed; that this action be and the same is hereby dismissed with prejudice; and that the costs of the action be taxed against the plaintiffs."

Plaintiffs Beasley, Bassetti, and Jones appealed. The Court of Appeals in an opinion by Judge Morris, concurred in by Judges Vaughn and Graham, reversed. We allowed *certiorari* on 14 September 1972.

*McCaul, Grigsby and Pearsall by Robert C. Moss; Hudson, Petree, Stockton, Stockton & Robinson by R. M. Stockton, Jr., and James H. Kelly, Jr., for defendant appellants.*

*Larry L. Eubanks for plaintiff appellees Beasley, Bassetti, and Jones.*

*Haynsworth, Baldwin and Miles by James M. Miles, Attorneys for Associated Industries, Inc., Capital Associated Industries, Inc., Central Piedmont Industries, Inc., Piedmont Associated Industries, Inc., and Western Carolina Industries, Inc., Amici Curiae.*

MOORE, Justice.

[1] The first question posed on this appeal is whether the courts of North Carolina have jurisdiction to adjudicate a claim brought by plaintiffs, supervisors, against their employer for damages resulting from an alleged unfair practice under the provisions of our Right-to-Work Law, Chapter 328, Session Laws of 1947, codified as G.S. 95, Sections 78 through 84.

Plaintiffs were discharged from their employment with defendant Food Fair of N. C., Inc., on June 25 and June 27, 1971. Plaintiffs allege that the discharge contravenes G.S. 95-81, which is as follows:

> "No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment."

Plaintiffs' action for damages is based on G.S. 95-83, which provides:

> "Any person who may be denied employment or be deprived of continuation of his employment in violation of §§ 95-80, 95-81, and 95-82 or of one or more of such sections, shall be entitled to recover from such employer and from any other person, firm, corporation, or association acting in concert with him by appropriate action in the courts of this State such damages as he may have sustained by reason of such denial or deprivation of employment."

Our Right-to-Work Law has been upheld by this Court and the Supreme Court of the United States. *State v. Whitaker*, 228 N.C. 352, 45 S.E. 2d 860 (1947); *Lincoln Fed. L. U. v. Northwestern I. & M. Co.*, 335 U.S. 525, 93 L.Ed. 212, 69 S.Ct. 251, 6 A.L.R. 2d 473 (1949); 29 USC § 164(b). The determinative question then in this case is: Are supervisors entitled to protection under this Act?

Prior to the institution of this action, plaintiffs filed charges with the National Labor Relations Board claiming that their discharges were unlawful under the National Labor Relations Act as amended. The Regional Director of that Board found that the employer was engaged in commerce within the meaning of the Act and it would effectuate the purpose of the Act to assert jurisdiction, but dismissed the charges after determining that the plaintiffs were supervisors and not employees

and were not entitled to protection of the Act. The Board's General Counsel denied plaintiffs' appeal for the same reason. Thereafter the plaintiffs instituted this action.

In *Willard v. Huffman*, 250 N.C. 396, 109 S.E. 2d 233 (1959), this Court upheld a judgment for an employee awarding damages sustained as the result of his discharge by his employer for failure to abstain and refrain from membership in a labor union or labor organization. The *Willard* case is distinguishable from the present case in two important respects. First, in *Willard* the National Labor Relations Board refused to consider plaintiff's claim, stating: "Further proceedings are not warranted inasmuch as the operations of the employer do not appear to meet the required standards to warrant the Board's exercise of its jurisdiction in this matter." In the present case, the National Labor Relations Board had jurisdiction but refused to grant plaintiffs' relief due to the provisions of 29 USC § 164(a), which provides:

> "Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, *but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local relating to collective bargaining.*" (Emphasis added.)

Secondly, plaintiff in *Willard* was an employee clearly entitled to protection under our Right-to-Work Law, while in the present case plaintiffs were admittedly supervisors.

The National Labor Relations Act as amended distinguishes supervisors from employees. 29 USC § 152(3) provides, *inter alia:* "The term 'employee' shall include any employee . . . but shall not include . . . any individual employed as a supervisor. . . ." 29 USC § 152(11) defines the term "supervisor" as: ". . . (A)ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances. . . ."

Since the 1947 amendments to the National Labor Relations Act, the federal courts have been called upon on numerous occasions to determine the relative rights of employers and supervisors under that statute. The federal courts have consistently held that a supervisor is not protected under the statute from

discharge due to union membership or activity. In *NLRB v. Big Three Welding Equipment Co.,* 359 F. 2d 77 (5th Cir. 1966), the Court decided that a "dispatcher" of company trucks and drivers was a supervisor. Based upon that determination, it was held that the plaintiff was not entitled to reinstatement and back pay because of his discharge for union membership and activity. *Accord, NLRB v. Charley Toppino and Sons, Inc.,* 332 F. 2d 85 (5th Cir. 1964). In *Oil City Brass Works v. NLRB,* 357 F. 2d 466 (5th Cir. 1966), the same Court said:

> "If Hammock was fired solely because of his union affiliation, there has been no unfair labor practice on which the Board can predicate its order. The National Labor Relations Act does not protect supervisory personnel. [Citations omitted.] It is settled that the Act does not preclude a company from firing or refusing to recall from layoff status a supervisory employee solely because that employee is affiliated with a union. [Citations omitted.]"

The Ninth Circuit Court of Appeals reached the same conclusion in *NLRB v. Fullerton Publishing Company,* 283 F. 2d 545 (9th Cir. 1960). In that case the county news editor of a newspaper was deemed to be a supervisor. The Court then said:

> "The law is clear that a supervisor is not entitled to the protection afforded ordinary employees under the National Labor Relations Act, and as to supervisors there can be no such thing as a discriminatory discharge or unfair labor practice. . . . "

*Accord, NLRB v. Inter-City Advertising Co.,* 190 F. 2d 420 (4th Cir. 1951), cert. den. 342 U.S. 908, 96 L.Ed. 679, 72 S.Ct. 301 (1952) ; *NLRB v. Griggs Equipment, Inc.,* 307 F. 2d 275 (5th Cir. 1962).

The federal cases go further than merely holding that the National Labor Relations Act affords supervisory personnel no protection. These cases recognize the existence of the legislative intent on the part of Congress to leave employers unfettered in dealing with union affiliation on the part of their supervisory personnel. *NLRB v. Edward G. Budd Mfg. Co.,* 169 F. 2d 571 (6th Cir. 1948), cert. den. 335 U.S. 908, 93 L.Ed. 441, 69 S.Ct. 411 (1949), was one of the first cases dealing with supervisors decided after the 1947 amendments to the National Labor Relations Act. There the Court discussed the intent of Congress in enacting the amendments:

"We believe it is clear that Congress intended by the enactment of the Labor Management Relations Act that employers be free in the future to discharge supervisors for joining a union, and to interfere with their union activities. . . . "

Congressional intent was also considered at length by Circuit Judge Pope in *NLRB v. Retail Clerks Inter. Ass'n*, 211 F. 2d 759 (9th Cir. 1954) :

"A primary objective of § 2(11) of the Act, to which reference is made in this paragraph of the decree, was to assure to the employer his right to procure the loyalty and efficiency of his supervisors and managers. The reports which accompanied the legislative bill which Congress enacted into the Labor Management Relations Act of 1947, made this abundantly clear. The reports were specific as to certain evils which the congressional committees thought they could avoid by excluding foremen and other supervisors from the operation of the Labor Act. Much emphasis was laid upon the desirability of assuring their independence of unions of the rank-and-file. It was noted that what had been happening in respect to unionizing of foremen under the former Act was 'bad for output' and hurt the free flow of commerce which the Act was intended to promote . . . . "

Similarly, in *Carpenters District Council, Etc. v. NLRB*, 274 F. 2d 564 (D.C. Cir. 1959), that Court said :

" . . . Congress was aware of the potential conflict between the obligations of foremen as representatives of their employers, on the one hand, and as union members, on the other. Section 2(3) evidences its intent to make the obligations to the employer paramount. That provision excepts foremen from the protection of the Act. Its purpose was to give the employer a free hand to discharge foremen as a means of ensuring their undivided loyalty, in spite of any union obligations. . . . "

"When a union attempts to organize supervisors, or when supervisors elect to become members of a union, a problem of federal preemption does arise." 4 Jenkins, Labor Law § 21.9, The Federal Preemption Doctrine, p. 103. In *San Diego Unions v. Garmon*, 359 U.S. 236, 3 L.Ed. 2d 775, 79 S.Ct. 773 (1959),

Mr. Justice Frankfurter, speaking for the majority, laid down certain guidelines when he said:

" . . . If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7 [29 USC § 157] or prohibited by § 8 [29 USC § 158], then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. . . . " 359 U.S. at p. 245.

In *Hanna Mining v. Marine Engineers*, 382 U.S. 181, 15 L.Ed. 2d 254, 86 S.Ct. 327 (1965), in an opinion by Mr. Justice Harlan, expressing the view of eight members of the Court, it was held that under the circumstances of that case, the federal Act did not preempt the State's jurisdiction. Plaintiffs, employers, declined to negotiate with a union representing the marine engineers until it was established that the union represented a majority of the engineers, whereupon the union picketed plaintiffs' ships. Employers petitioned that a representation election among its engineers be held. The petition was dismissed by the National Labor Relations Board on the ground that the engineers were "supervisors" under the Act and excluded from the definition of employees. The employers' charge, alleging a violation of Section 8 (29 USC § 158) of the Act, was dismissed on the ground that the union's conduct fell outside the provisions of the Act because it sought to represent "supervisors" rather than "employees." Plaintiffs then brought suit in Wisconsin state court seeking injunctive relief. The state court dismissed for lack of jurisdiction. The Supreme Court of Wisconsin affirmed on the ground that the picketing, while illegal under Wisconsin law, arguably violated Sections 8(b) (4) (B) and 8(b) (7) of the Act (29 USC § 158(b) (4) (B) and 29 USC § 158(b) (7) ) and so fell within the exclusive jurisdiction of the National Labor Relations Board. In reversing, the Supreme Court said:

"The ground rules for preemption in labor law, emerging from our *Garmon* decision, should first be briefly summarized: in general, a State may not regulate conduct arguably 'protected by § 7, or prohibited by § 8' of the National Labor Relations Act, see 359 U.S., at 244-246, and the legislative purpose may further dictate that certain

activity 'neither protected nor prohibited' be deemed priv-
ileged against State regulation, cf. 359 U.S., at 245."

Thus, after reaffirming the "arguably" test as set out in *Gar-mon*, *Hanna* recognized an additional aspect of the *Garmon* rule:
"(L)egislative purpose may further dictate that certain activity
'neither protected nor prohibited' be deemed privileged against
state regulation." The Court then determined that because the
picketers in *Hanna* were supervisors, their activity was not
arguably protected or prohibited by Sections 7 and 8. The union
argued, however, that Section 14(a) indicated that Congress
had affirmatively adopted a *laissez faire* attitude toward super-
visors which brought the case within the second aspect of the
*Garmon* rule and precluded both federal and state regulation.
In answering this contention Mr. Justice Harlan said:

> "This broad argument fails utterly in light of the
> legislative history, for the Committee reports reveal that
> Congress' propelling intention was to relieve employers
> from any compulsion under the Act and under state law
> to countenance or bargain with any union of supervisory
> employees. Whether the legislators fully realized that their
> method of achieving this result incidentally freed super-
> visors' unions from certain limitations under the newly
> enacted § 8(b) is not wholly clear, but certainly Congress
> made no considered decision generally to exclude state
> limitations on supervisory organizing. . . . "

The Wisconsin law increased the restrictions on supervisor
organizing and so was consistent with the national labor rela-
tions policy concerning supervisors. *Hanna,* however, specifically
recognizes a national policy established by Congress "to relieve
employers from any compulsion under the Act and under state
law to countenance or bargain with any union of supervisory
employees." The plaintiffs contend that the North Carolina
Right-to-Work Law protects supervisors from discharge based
solely upon union membership. If the North Carolina Right-to-
Work Law, in fact, does this, the additional burden on employ-
ers and the added protection for supervisors would run counter
to the legislative intent assigned to Congress by both Mr.
Justice Harlan in *Hanna* and the many Circuit Court of Appeals
cases herein cited. Preservation of the integrity of a national
policy in the field of labor-management relations is the purpose
of the doctrine of federal preemption in this context.

Further insight into the application of the preemption doctrine in situations which do not fall within the "arguably" test of *Garmon* may be found in an analysis of *Teamsters Local 20 v. Morton,* 377 U.S. 252, 12 L.Ed. 2d 280, 84 S.Ct. 1253 (1964). In that case Morton was engaged in hiring out trucks and drivers for use in highway construction. Local 20 represented Morton's employees. During a strike over the terms of a new collective bargaining agreement, Local 20 sought to exert upon Morton various forms of secondary pressure which violated Section 8(b)(4) of the National Labor Relations Act. Local 20 also persuaded the management of one of Morton's customers to refrain from doing business with Morton during the strike. Since the customer was not threatened with any form of reprisal, the persuasion to boycott Morton was not even arguably an unfair labor practice. Local 20 was, likewise, not protected in this activity by the National Labor Relations Act. A persuasive boycott, however, violated Ohio law and the state courts granted compensatory and punitive damages. The United States Supreme Court acknowledged that the union's activity did not bring the case within the *Garmon* rule:

> "It is the respondent's contention, however, that since the petitioner union's peaceful conduct was neither arguably protected under § 7 nor arguably prohibited under § 8 of the National Labor Relations Act, as amended, the trial court was free to award damages on the basis of state law for injuries caused by this conduct. But even though it may be assumed that at least some of the secondary activity here involved was neither protected nor prohibited, it is still necessary to determine whether by enacting § 303, 'Congress occupied this field and closed it to state regulation.' *Automobile Workers v. O'Brien,* 339 U.S. 454, 457. The basic question, in other words, is whether 'in a case such as this, incompatible doctrines of local law must give way to principles of federal labor law.' *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 102. . . . "

The Court then determined that a persuasive boycott was precluded from state regulation by the preemption doctrine. The Court said:

> " . . . This weapon of self-help, permitted by federal law, formed an integral part of the petitioner's effort to achieve its bargaining goals during negotiations with the respondent. Allowing its use is a part of the balance struck

by Congress between the conflicting interests of the union, the employees, the employer and the community. *Electrical Workers Local 761 v. Labor Board,* 366 U.S. 667, 672. If the Ohio law of secondary boycott can be applied to proscribe the same type of conduct which Congress focussed upon but did not proscribe when it enacted § 303 [8(b)(4)], the inevitable result would be to frustrate the congressional determination to leave this weapon of self-help available, and to upset the balance of power between labor and management expressed in our national labor policy. 'For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits.' *Garner v. Teamsters Union,* 346 U.S. 485, 500. . . . "

To permit a state law to deprive an employer of his right to discharge his supervisor for membership in a union would completely frustrate the congressional determination to leave this weapon of self-help to the employer. Furthermore, the balance of power between labor and management expressed in our national labor policy would be upset. *Oil City Brass Works v. NLRB, supra; NLRB v. Fullerton Publishing Co., supra; Carpenters District Council, Etc. v. NLRB, supra.* See 85 Harv. L. Rev. 1337, 1351, *Labor Law Preemption Revisited.*

Congress and the federal courts have adopted a national industrial relations policy which gives an employer the right to discharge his supervisor for union membership. The state is precluded from interfering with that policy. "When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the states from acting." *San Diego Unions v. Garmon,* 359 U.S. 236, 3 L.Ed. 2d 775, 79 S.Ct. 773 (1959). "Incompatible doctrines of local law must give way to principles of federal labor law." *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 7 L.Ed. 2d 593, 82 S.Ct. 571 (1961).

[2] The North Carolina Right-to-Work Law defines certain rights of employers and employees. See *State v. Whitaker, supra; Lincoln Fed. L. U. v. Northwestern I. & M. Co., supra.* However, this state law cannot be construed to contravene the national policy as between employer and supervisor. When, as in the present case, the facts disclose that plaintiffs as supervisors

seek to invoke a remedy precluded by the established national policy, the doctrine of federal preemption applies, and the state court is without jurisdiction over the subject matter of the controversy. For this reason, it is not necessary to consider the other questions raised by the pleadings in this case or discussed in the opinion of the Court of Appeals.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals with direction that it remand the case to the Superior Court of Forsyth for entry of judgment affirming the order of Judge Gambill dismissing the action.

Reversed and remanded.